# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE NIXON, | Civil No. 3:22-cv-1999 |
| Plaintiff | (Judge Mariani) |
| v. | |
| WENDY NICHOLAS, *et al.*, | |
| Defendants | |

## MEMORANDUM

Plaintiff Denise Nixon ("Nixon"), an inmate formerly housed at the State Correctional Institution, Muncy, Pennsylvania ("SCI-Muncy"), commenced this civil rights action pursuant to 42 U.S.C. § 1983.[1] (Doc. 1). Named as Defendants are Superintendent Nicholas, Deputy Superintendent Frantz, Major Stevens, and Safety Management Specialist Minnig.[2] Before the Court is Defendants' motion (Doc. 16) to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). Pursuant to Federal Rule of Civil Procedure 12(d), the Court will treat the motion as one for summary judgment under Rule 56 with respect to the issue of exhaustion of administrative remedies.[3] The remaining claim will be addressed in the

---

[1] Nixon has been released from custody. (*See* Doc. 12).

[2] Nixon subsequently filed an amended complaint wherein she named Dr. Shafik as a Defendant in this action. (Doc. 13). The instant motion is not filed on behalf of Dr. Shafik.

[3] On March 14, 2023, the Court issued an Order apprising the parties that the motion to dismiss would be treated as one for summary judgment with respect to the issue of exhaustion of administrative remedies. (Doc. 18). Because Defendants raised the issue of exhaustion of administrative remedies, the Court also notified the parties that it would consider exhaustion in its role as factfinder in accordance with

Rule 12(b) motion. Nixon failed to respond to Defendants' motion and the time for responding has now passed.[4] Therefore, the motion is deemed unopposed and ripe for resolution. For the reasons set forth below, the Court will grant the motion.

## I.   Allegations of the Complaint

Nixon arrived at SCI-Muncy on July 12, 2022. (Doc. 1, p. 4). She was issued a uniform and shoes on August 10, 2022. (*Id.*). Nixon alleges that the pant legs of the uniform were too long and needed to be hemmed. (*Id.*). She wrote to Mrs. Schuller, a non-defendant who worked in the garment shop, and asked if her pants could be hemmed. (*Id.*). Nixon states that she did not receive a response from Mrs. Schuller. (*Id.*). Nixon further states that SCI-Muncy policy does not allow an individual to modify their own uniform. (*Id.*). Nixon alleges that, on August 23, 2022, she fell going down the steps and injured her knee because her pant legs were too long. (*Id.* at pp. 4-5). She underwent surgery on September 1, 2022. (*Id.*).

On September 10, 2022, Nixon filed Grievance Number 997981 wherein she stated that she was injured due to her ill-fitted uniform. (*Id.* at p. 4; Doc. 17-1, pp. 4-5). Nixon

---

*Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Doc. 18).

[4]   Nixon was directed to file a brief in opposition to Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed. (Doc. 24) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

contends that Defendant Stevens responded to her grievance and suggested that she could have rolled up her pant legs. (Doc. 1, p. 4).

Nixon seeks damages for the violation of her rights under the Fourth, Eighth, and Fourteenth Amendments. (*Id.* at pp. 5-6).

## II. Rule 12(b)(6) Motion

### A. Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

B.   **Discussion**

Defendants Nicholas, Frantz, Stevens, and Minnig argue that Nixon fails to state a claim against them because they lack personal involvement in the alleged wrongs. (Doc. 17, pp. 5-7). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

A review of the complaint confirms that other than being named as Defendants, there exist no factual averments relating to Defendants Nicholas, Frantz, and Minnig in the body of the complaint. (*See* Doc. 1). Nixon fails to identify the particular conduct of these Defendants that allegedly violated her rights. There are no allegations that these

5

Defendants participated in, directed, or knew of and acquiesced in the alleged violation of Nixon's rights. This style of pleading is patently inadequate since it fails to allege facts that give rise to a plausible claim for relief against these Defendants. *Hudson v. City of McKeesport*, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case).

With respect to Defendant Stevens, Nixon attempts to hold him liable based on his involvement in the grievance procedure. (Doc. 1, p. 4). This claim fails. Courts have routinely held that the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). Dissatisfaction with responses to an inmate's grievances does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for § 1983 liability). Because the claim against Defendant Stevens is premised on his role in the grievance process, he is entitled to dismissal.

To the extent that Nixon seeks to hold Superintendent Nicholas, Deputy Superintendent Frantz, Major Stevens, and Safety Management Specialist Minnig liable based upon their supervisory roles, this claim also fails. Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. Accordingly, insofar as Nixon's claims against

Defendants Nicholas, Frantz, Stevens, and Minnig rely on a *respondeat superior* theory of liability, they are entitled to dismissal on this ground.

For all the foregoing reasons, Defendants' Rule 12(b) motion will be granted.

## III. Rule 56 Motion

### A. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### B. Discussion

Defendants contend that Nixon failed to properly exhaust any grievances in the prison's administrative review process prior to proceeding to federal court. (Doc. 17, pp. 7-

9). Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The

PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

The Department of Corrections has an Inmate Grievance System, set forth in DC-ADM 804, which permits any inmate to seek review of problems that may arise during the course of confinement. *See* 37 Pa. Code § 93.9(a); Pa. Dep't of Corr., No. DC-ADM 804. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth*, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process).

The record reflects that Nixon filed one grievance relating to the allegations in the complaint. On September 10, 2022, Nixon filed Grievance Number 997981 wherein she stated that she fell down steps and injured her knee because her uniform was too long. (Doc. 17-1, pp. 4-5). On October 23, 2022, Defendant Stevens issued an initial review response and denied the grievance. (*Id.* at p. 3). Nixon then filed an appeal to the SOIGA. On October 21, 2022, the SOIGA dismissed the appeal because Nixon failed to first appeal the issue to the Facility Manager. (*Id.* at p. 2). An untimely "or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's mandatory exhaustion requirement. *See Woodford v. Ngo*, 548 U.S. 81, 83 (2006); *see also Spruill*, 372 F.3d at 230. It is undisputed that Nixon failed to follow the DOC's three-step grievance system and failed to properly exhaust her administrative remedies. Nixon filed her initial grievance, bypassed the mandatory appeal to the Facility Manager, and, instead, filed an appeal to the SOIGA. Because Nixon failed to appeal the initial response to the Facility Manager, as required by DC-ADM 804, the SOIGA dismissed the appeal and advised her to first submit her appeal to the Facility Manager and, upon receiving a response from the Facility Manager, to file a final appeal to the SOIGA. Rather than comply with the directive of the SOIGA, Nixon abandoned her appeal.

The PLRA mandates that inmates properly exhaust their administrative remedies before filing suit in federal court, a requirement which demands compliance with an agency's deadlines and procedural rules. *Woodford*, 548 U.S. at 90-93. It is well-settled

that administrative remedies must be exhausted *prior* to the initiation of suit. *Booth v. Churner*, 532 U.S. 731, 738 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained."); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (nonprecedential) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit.").

Under certain circumstances, administrative remedies may not be effectively available to an inmate, preventing a timely pursuit of the prison grievance process. *See, e.g., Camp*, 219 F.3d at 281; *Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019) ("a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion"); *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision). The record simply does not support a finding that the administrative process was unavailable to Nixon. To the contrary, it establishes that Nixon had full and ready access to the administrative remedy process.

In light of the undisputed facts and relevant evidence of record, the Court concludes that Nixon has failed to produce any evidence to overcome Defendants' summary judgment motion and cannot argue against summary judgment by merely relying on unsupported assertions. Under Rule 56, Nixon was required to go beyond the pleadings with affidavits or the like in order to establish the existence of a genuine dispute of material fact. *See Celotex*

*Corp.*, 477 U.S. at 324. Because she has failed to do so, the Court concludes that Nixon has not properly exhausted the claims in this action, and Defendants are entitled to an entry of summary judgment in their favor.

## IV.   Conclusion

The Court will grant Defendants' motion (Doc. 16) in its entirety. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: April 25, 2023