# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DENISE NIXON,                                    :         Civil No. 3:22-cv-1999
                                                 :
            Plaintiff                            :         (Judge Mariani)
                                                 :
      v.                                         :
                                                 :
WENDY NICHOLAS, et al.,                          :
                                                 :
            Defendants                           :

## MEMORANDUM

Plaintiff Denise Nixon ("Nixon"), an inmate formerly housed at the State Correctional

Institution at Muncy, Pennsylvania ("SCI-Muncy"), commenced this civil rights action

pursuant to 42 U.S.C. § 1983.[1]  (Doc. 1).  The remaining Defendants are Dr. John Shafik

and John/Jane Doe.  (Docs. 1, 13).  Before the Court is Defendant Shafik's motion (Doc. 32)

to dismiss or, in the alternative, for summary judgment.  Pursuant to Federal Rule of Civil

Procedure 12(d), the motion will be treated as one for summary judgment, and disposed of

as provided in Rule 56, only with respect to the issue of exhaustion of administrative

remedies.[2]  The remaining claim will be addressed under Rule 12(b).  Nixon failed to

---

[1]   Nixon has been released from custody.  (See Doc. 12).

[2]   On June 12, 2023, the Court issued an Order apprising the parties that the motion to dismiss would be treated as one for summary judgment with respect to the issue of exhaustion of administrative remedies.  (Doc. 34).  Because Defendant raised the issue of exhaustion of administrative remedies, the Court also notified the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies.  (Doc. 34).

respond to Defendant's motion and the time for responding has now passed.[3]  Therefore,

the motion is deemed unopposed and ripe for resolution.  For the reasons set forth below,

the Court will grant the motion.  The Court will also dismiss the action against the John/Jane

Doe Defendant pursuant to Federal Rule of Civil Procedure 4(m).

I.    **Allegations of the Complaint**

Nixon arrived at SCI-Muncy on July 12, 2022.  (Doc. 1, p. 4).  She was issued a

uniform and shoes on August 10, 2022.  (*Id.*).  Nixon alleges that the pant legs of the

uniform were too long and needed to be hemmed.  (*Id.*).  She wrote to Mrs. Schuller, a non-

defendant who worked in the garment shop, and asked if her pants could be hemmed.  (*Id.*).

Nixon states that she did not receive a response from Mrs. Schuller.  (*Id.*).  Nixon further

states that SCI-Muncy policy does not allow an individual to modify their own uniform.  (*Id.*).

Nixon alleges that, on August 23, 2022, she fell going down the steps and injured her knee

because her pant legs were too long.  (*Id.* at pp. 4-5).  Nixon was then transported to

Geisinger Medical Center and underwent scans.  (Doc. 13).  The doctor determined that she

was in need of "emergency surgery."  (*Id.*).  Nixon alleges that a phone call made, and she

was returned to SCI-Muncy and placed in the infirmary.  (*Id.*).  She further alleges that

Defendant Dr. Shafik "established a procedure to deny emergency surgery for 7 days."

(*Id.*).  Nixon underwent surgery on September 1, 2022.  (Doc. 1).

---

[3]    Nixon was directed to file a brief in opposition to Defendant's motion and was admonished that
failure to file an opposition brief would result in Defendant's motion being deemed unopposed.  (Doc. 35)
(citing M.D. PA. LOCAL RULE OF COURT 7.6).

Following the surgery, Nixon asserts that she was transported back to the prison with a prescription for oxycodone.  (Doc. 13).  She contends that the prison only issued her Tylenol #3, twice daily, which "was not enough."  (*Id.*).

On September 10, 2022, Nixon filed Grievance Number 997981 wherein she stated that she was injured due to her ill-fitted uniform.  (Doc. 1, p. 4; Doc. 32-2, p. 2).  In response, it was suggested that she could have rolled up her pant legs.  (Doc. 1, p. 4).

## II.   Rule 12(b)(6) Motion

### A.   Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'"  *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual

3

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

## B.    Discussion

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted).  A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.  *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988);

see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d

112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Assuming that Nixon's allegations qualify as a serious medical condition for

purposes of the Eighth Amendment analysis, the Court must determine whether she has

established a deliberate indifference to that need.  Nixon alleges that Defendant did not

perform surgery for seven days and that she was released from the hospital with a

prescription for Oxycodone, but the prison only gave her Tylenol #3.

The decision to provide one medication over another mediation does not amount to

deliberate indifference, but rather is "a classic example of a matter for medical judgment"

that "does not represent cruel and unusual punishment."  Estelle v. Gamble, 429 U.S. 97,

107 (3d Cir. 1976).  Given the considerable latitude afforded to prison authorities in the

treatment of prisoners, a prison doctor's decision to prescribe one drug over another simply

cannot give rise to an Eighth Amendment claim.  See White v. Napoleon, 897 F.2d 103, 110

(3d Cir. 1990) (doctor's choice of one drug over another is not actionable); Spruill, 372 F.3d

at 235 (holding that "mere disagreement as to the proper medical treatment" is insufficient to

state a constitutional violation); Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009)

(dispute over choice of medication does not rise to the level of an Eighth Amendment

violation).

Additionally, as case law indicates, a delay in a surgical procedure does not

automatically rise to the threshold of deliberate indifference.  In Davis v. First Corr. Medical,

589 F.Supp.2d 464 (3d Cir. 2008), where the plaintiff alleged that a delay in treatment

constituted deliberate indifference, the Court held that while there may have been a delay in

surgery due to diagnostic testing and scheduling, such a delay does not constitute

deliberate indifference to the inmate's medical condition without a more serious allegation

that the delay was due to non-medical reasons.  Similarly, in the case at bar, while Nixon

alleges that her surgery was delayed for seven days, she fails to plead that the delay was

"deliberate" or for "non-medical reasons."  *See Durmer v. O'Carroll*, 991 F.2d 64, 68-69 (3d

Cir. 1993).  Nixon's disagreement with the course of treatment is, as stated *supra*, an

improper basis for a deliberate indifference claim.

Nixon fails to allege facts from which it can reasonably be inferred that Defendant

exhibited deliberate indifference to her medical needs.  Therefore, the Court will dismiss

Nixon's Eighth Amendment inadequate medical care claim for failure to state a claim upon

which relief may be granted.

## III.    Rule 56 Motion

### A.    Legal Standard

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine dispute as to any material fact."  FED. R. CIV. P. 56(a).  "As to materiality,

. . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127

S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).  If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts.  Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial.  The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of
> material fact.  When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### B.    Discussion

Defendant contends that Nixon failed to properly exhaust any grievances in the

prison's administrative review process prior to proceeding to federal court.  (Doc. 33, pp. 9-

14).  Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to

pursue all avenues of relief available within the prison's grievance system before bringing a

federal civil rights action concerning prison conditions.  *See* 42 U.S.C. § 1997e(a); *Booth v.*

*Churner*, 206 F.3d 289, 291 (3d Cir. 2000).  Section 1997e(a) establishes the requirement

of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies as are
> available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

The Department of Corrections has an Inmate Grievance System, set forth in DC-ADM 804, which permits any inmate to seek review of problems that may arise during the

course of confinement.  *See* 37 Pa. Code § 93.9(a); Pa. Dep't of Corr., No. DC-ADM 804.

After an attempt to resolve any problems informally, an inmate may submit a written

grievance to the Facility's Grievance Coordinator for initial review.  This must occur within

fifteen days after the events upon which the claims are based.  Within fifteen days of an

adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility

Manager of the institution.  Thereafter, within fifteen days of an adverse decision by the

Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate

Grievances and Appeals.  An appeal to final review cannot be completed unless an inmate

complies with all established procedures.  An inmate must exhaust all three levels of review

and comply with all procedural requirements of the grievance review process in order to fully

exhaust an issue.  *See Booth*, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance

review process).

The record reflects that Nixon filed one grievance relating to the allegations in the

complaint.  On September 10, 2022, Nixon filed Grievance Number 997981 wherein she

stated that she fell down steps and injured her knee because her uniform was too long.

(Doc. 32-2, p. 2).  On October 23, 2022, the grievance was denied on initial review and

Nixon was advised that she was permitted to roll up her pants as long as they were not

pegged or permanently altered.  (Doc. 17-1, p. 3).  Nixon then filed an appeal to the SOIGA.

(Doc. 32-2, pp. 3-4).  On October 21, 2022, the SOIGA dismissed the appeal because

Nixon failed to first appeal the issue to the Facility Manager.  (*Id.* at p. 1).

An untimely "or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's mandatory exhaustion requirement. *See Woodford v. Ngo*, 548 U.S. 81, 83 (2006); *see also Spruill*, 372 F.3d at 230. It is undisputed that Nixon failed to follow the DOC's three-step grievance system and failed to properly exhaust her administrative remedies. Nixon filed her initial grievance, bypassed the mandatory appeal to the Facility Manager, and, instead, filed an appeal to the SOIGA. Because Nixon failed to appeal the initial response to the Facility Manager, as required by DC-ADM 804, the SOIGA dismissed the appeal and advised her to first submit her appeal to the Facility Manager and, upon receiving a response from the Facility Manager, to file a final appeal to the SOIGA. Rather than comply with the directive of the SOIGA, Nixon abandoned her appeal and proceeded to federal court.

The PLRA mandates that inmates properly exhaust their administrative remedies before filing suit in federal court, a requirement which demands compliance with an agency's deadlines and procedural rules. *Woodford*, 548 U.S. at 90-93. It is well-settled that administrative remedies must be exhausted *prior* to the initiation of suit. *Booth v. Churner*, 532 U.S. 731, 738 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained."); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (nonprecedential) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit.").

Under certain circumstances, administrative remedies may not be effectively available to an inmate, preventing a timely pursuit of the prison grievance process. *See, e.g., Camp*, 219 F.3d at 281; *Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019) ("a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion"); *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision). The record simply does not support a finding that the administrative process was unavailable to Nixon. To the contrary, it establishes that Nixon had full and ready access to the administrative remedy process.

In light of the undisputed facts and relevant evidence of record, the Court concludes that Nixon has failed to produce any evidence to overcome Defendant's summary judgment motion and cannot argue against summary judgment by merely relying on unsupported assertions. Under Rule 56, Nixon was required to go beyond the pleadings with affidavits or the like in order to establish the existence of a genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 324. Because she has failed to do so, the Court concludes that Nixon has not properly exhausted the claims in this action, and Defendant is entitled to an entry of summary judgment in his favor.

IV.     **Federal Rule of Civil Procedure 4(m)**

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with

the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the
> court -- on motion or on its own after notice to the plaintiff -- must dismiss the
> action without prejudice against that defendant or order that service be made
> within a specified time.  But if the plaintiff shows good cause for the failure,
> the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  The John/Jane Doe Defendant was named in the complaint that was

filed on December 16, 2022, and, to date, has not been identified or served in this case.

The Court must engage in a two-step process in determining whether to dismiss the

unidentified, non-served Defendant or grant Nixon additional time to effect service.  "First,

the district court should determine whether good cause exists for an extension of time.  If

good cause is present, the district court must extend time for service and the inquiry is

ended.  If, however, good cause does not exist, the court may in its discretion decide

whether to dismiss the case without prejudice or extend time for service."  *Petrucelli v.*

*Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).  Good cause requires good faith

on the part of the party seeking an enlargement and some reasonable basis for

noncompliance with the time specified in the rules.  *MCI Telecomm. Corp. v. Teleconcepts,*

*Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995).  In determining whether good cause exists, a

court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the

first place." *Id.* Although prejudice is a factor to be considered, the absence of prejudice to

the opposing party alone does not constitute good cause to excuse late service. *Id.*

In the present matter, Nixon failed to establish good cause. On September 22, 2022,

the Court ordered Nixon to provide additional information concerning the identity of the

John/Jane Doe Defendant and warned her that failure to comply may result in the dismissal

of Plaintiff's claims against the Defendant pursuant to Rule 4(m). (Doc. 6 ¶ 8). Nixon failed

to do so. Therefore, after the expiration of the ninety-day time period set forth in Rule 4(m),

the Court again notified Nixon that the action against the John/Jane Doe Defendant was

subject to dismissal and directed her to show cause why the action against this Defendant

should not be dismissed pursuant to Rule 4(m). (Doc. 36). Nixon failed to respond to the

Rule 4 show cause order, and Nixon's *pro se* status is not good cause to excuse her failure

to timely identify or serve this Defendant. *Veal v. United States*, 84 F. App'x 253, 256 (3d

Cir. 2004). Based upon the lack of any explanation for her failure to adhere to the

requirements of Rule 4, the Court finds that Nixon failed to establish good cause.

If a plaintiff cannot show good cause for his or her failure to serve the defendant

within ninety days, a district court may either dismiss the defendant, or exercise its

discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305;

*see also* FED. R. CIV. P. 4(m). It is Nixon's responsibility to properly identify all defendants,

and provide accurate mailing addresses for the defendants, in a timely fashion. (*See* Doc.6

¶¶ 7-8) (advising Nixon that failure to properly name a defendant, or provide an accurate

mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Nixon's lack of good faith effort to identify or serve the John/Jane Doe Defendant, despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the unidentified, non-served Defendant will be dismissed from this action.

## V.    Conclusion

The Court will grant Defendant's motion (Doc. 32) in its entirety.  The Court will also dismiss the action against the John/Jane Doe Defendant pursuant to Federal Rule of Civil Procedure 4(m).

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: July 21, 2023